Case No. 24-13102

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

———————

Properties of the Villages, Inc.,

*Plaintiff-Appellee*,

*v.*

Federal Trade Commission,

*Defendant-Appellant*.

———————

On Appeal from the United States District Court
For the Middle District of Florida (Corrigan, J.)
No. 5:24-cv-316

———————

**REPLY BRIEF IN SUPPORT OF MOTION FOR PERMISSIVE INTERVENTION AS INTERVENOR APPELLANTS OR, IN THE ALTERNATIVE, CONDITIONAL MOTION FOR INTERVENTION AS OF RIGHT BY SMALL BUSINESS MAJORITY, JOHN ROFFINO, AND DANIELLA EMMER**

———————

| | |
|---|---|
| David H. Seligman | Michael Lieberman |
| Rachel Dempsey | *Counsel of Record* |
| Towards Justice | Jamie Crooks |
| PO Box 371680, PMB 44465 | Tamar Katz |
| Denver, CO 80237 | Fairmark Partners, LLP |
| david@towardsjustice.org | 1001 G Street NW, Suite 400 East |
| rachel@towardsjustice.org | Washington, DC 20001 |
| (720) 441-2236 | michael@fairmarklaw.com |
| | jamie@fairmarklaw.com |
| | tamar@fairmarklaw.com |
| | (818) 585-2903 |
| | |
| | *Counsel for Proposed Intervenors* |

January 30, 2025

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for Proposed Intervenors certifies that, to the best of his knowledge, no persons or entities other than those already listed in the party and amicus briefs filed in this case have an interest in the outcome of this litigation, with the exception of the following:

Katz, Tamar

*/s/ Michael Lieberman*  
Counsel for Proposed Intervenors

## TABLE OF CONTENTS

I.　This Action Seeks To Vacate and Set Aside The Non-Compete Rule In Its Entirety. ................................................................................................ 1

II.　Proposed Intervenors' Motion is Timely and This Case Presents Imperative Reasons Warranting Intervention on Appeal. ............................... 2

III.　Proposed Intervenors Have Interests That Would Be Impaired By An Adverse Judgment. ................................................................................ 5

IV.　Intervention Would Not Undermine Congress's Authority. ........................... 9

CONCLUSION ............................................................................................... 11

CERTIFICATE OF COMPLIANCE ........................................................................ i

CERTIFICATE OF SERVICE ................................................................................ ii

## I.     This Action Seeks To Vacate and Set Aside The Non-Compete Rule In Its Entirety.

The Parties cannot have it both ways—characterizing this as a narrow appeal about one company while simultaneously treating it as the vehicle for resolving the Rule's validity nationwide. While the district court's preliminary injunction is narrow, Plaintiff-Appellee's complaint seeks "an order vacating and setting aside the Non-Compete Rule *in its entirety*." Complaint, ECF 1 at 45 (emphasis added). The parties' own joint status report acknowledges that whether that broader relief is ultimately granted will turn largely on the outcome of this appeal: "[T]he legal questions at issue on appeal, particularly whether Plaintiff has a likelihood of success on the merits of its challenge, will substantially overlap with questions to be raised on motions for summary judgment." Joint Status Report, ECF 66 ¶ 3. The Parties viewed this appeal as so likely to dictate future proceedings that they jointly asked the district court to "stay all deadlines" pending the appeal, *id.* ¶ 5, and the district court went one step further and administratively closed the case pending appeal. *See* Order, ECF 67.

This broader context is crucial. Indeed, the inquiry under Rule 24—which all agree should guide the Court, POV Opp. at 3-4; FTC Opp. at 4—is whether Proposed Intervenors have an interest in *the action as whole*, not just in the matter currently under consideration. The Rule's text makes this clear: "On timely motion, the court must permit anyone to intervene who: claims an interest relating to the property or

1

transaction that is the subject of the *action*, and is so situated that disposing of the *action* may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2) (emphasis added). Proposed Intervenors have unmistakable interests in the Rule, *see infra* Part III, and the Court must evaluate those interests in light of the full context of the action—not, as the parties suggest, with blinders on.

**II.    Proposed Intervenors' Motion is Timely and This Case Presents Imperative Reasons Warranting Intervention on Appeal.**

Proposed Intervenors intervened in this Court for one simple reason: The recent change in administration makes it much more likely that government will stop defending the Rule. Contrary to the parties' assertions, Proposed Intervenors had no reason or opportunity to intervene in the district court, which issued the injunction three months before the election and while the government was still vigorously defending the Rule. Proposed Intervenors filed the Motion once it became apparent the government's position might change, in which case—and only in that case—Proposed Intervenors would step in to continue the Rule's defense.

POV argues the Motion is untimely because "Proposed Intervenors knew or should have known of their interest [in the Rule surviving challenge] at the inception of this lawsuit"; therefore, "intervention early on in the district court" was the proper course. POV Opp. at 11-12. By POV's lights, Proposed Intervenors should have filed

2

several months *before* the election, because there is always a risk that an election might change the government's litigating position. *Id.* at 12-13.

POV cites no cases supporting this timeliness argument because the cases foreclose it. Setting aside the perverse incentives and wasteful filings POV's rule would engender, the Supreme Court has flatly rejected it: "timeliness is to be determined from all the circumstances, and the point to which a suit has progressed is not solely dispositive." *Cameron*, 595 U.S. at 279. In *Cameron*, as here, there was no intervention in district court, only on appeal. *Id.* The Sixth Circuit ruled that the intervenor should have moved at the beginning of the case—*i.e.*, precisely POV's argument. The Supreme Court reversed, finding an abuse of discretion: "The attorney general's need to seek intervention did not arise until the secretary ceased defending the state law, and the timeliness of his motion should be assessed in relation to that point in time." *Id.* at 280. Proposed Intervenors' motion, coming even *before* FTC changes positions, cannot be late under this standard, which is why POV ignores this binding precedent. *See also* Mot. at 11-12 (collecting cases).

Regardless, Proposed Intervenors also satisfy the alternative "exceptional case for imperative reasons" standard the Parties invoke, FTC Opp. at 4; POV Opp. at 2, because the entire premise of their Motion is that they will participate *only* if FTC changes positions and stops defending the Rule. By acquiescing to an adverse judgment, the government would be effectively repealing the Rule through litigation,

3

thereby "circumvent[ing] the usual and important requirement, under the Administrative Procedure Act, that a regulation originally promulgated using notice and comment … may only be repealed through notice and comment." *Arizona v. City & Cty. of S.F.*, 596 U.S. 763, 765-66 (2022) (Roberts, C.J., concurring). And that possibility now appears more real than ever: the government not only fails to commit to defending the Rule going forward, it has already started working to undermine it, taking an implausibly narrow view of the Rule's scope in arguing that Ms. Emmer's non-compete falls outside its reach. *See infra* Section III. A party artificially narrowing its own Rule can hardly be trusted to champion it.

This situation—an overhaul of a government policy affecting millions of American citizens and businesses based on the decision of one district court judge and a new administration that eschews administrative procedures—is exceptional indeed. To be clear, this version of events may not obtain, in which case granting Proposed Intervenors' motion or holding it in abeyance would not materially affect the parties or the Court. *See* Mot. at 2 ("Proposed Intervenors do not intend to make any substantive filings in this case unless and until the government stops defending the Rule."). But FTC's contention that intervention is unnecessary because it has adequately represented Proposed Intervenors' interests to date, FTC Opp. at 6, ignores real-world context and the nature of Proposed Intervenors' request. The

4

concern is not with the government's actions thus far, but with the possibility that the government may soon change course. *Id.*

Proposed Intervenors moved now to avoid a later timeliness issue, and to protect their interests in the Rule being defended. Their Motion is timely, and their commitment not to disrupt the case absent the government's non-defense obviates any prejudice concerns.

### III. Proposed Intervenors Have Interests That Would Be Impaired By An Adverse Judgment.

The government argues that Mr. Roffino lacks an adequate interest in defending the Non-Compete Rule because the two-year term of his non-compete expires soon, and his concerns about enforcement after that date are too speculative. This is wrong. Injuries that confer standing include not merely "'straightforward economic injuries,' like lost money, but also 'more nebulous' ones, like wasted time, missed credit opportunities, and emotional distress." *Walters v. Fast AC, LLC*, 60 F.4th 642, 649 (11th Cir. 2023). As he explains in his declaration, Mr. Roffino is committed to working in the field of mobility devices and would like to start a business competing with his former employer to serve the needs of disabled veterans like himself. Roffino Decl. ¶¶ 14-17. He is limited in his ability to do so because his non-compete restricts not only selling, but also activities like "business development" and "strategic planning," making him vulnerable to legal challenges from his former employer even if he starts a business more than two years after

5

leaving his job. *Id.* ¶¶ 19, 25-26. The employer has several more years to bring any such legal challenge, as the statute of limitations for breach of contract in Texas is four years. Tex. Civ. Prac. & Remedies Code § 16.051. And even if it were the case that Mr. Roffino's non-compete did not apply for much longer, the Rule would still foster his ability to start a competing business, as the non-competes of other employees in the industry would hamper Mr. Roffino's ability to recruit skilled workers. *Id.* ¶ 28. Whether the Rule goes into effect is impacting Mr. Roffino's employment and business decisions now, and will continue to do so. He has standing to defend it.

The government argues that Ms. Emmer lacks an interest for a different reason—because, in the government's view, "[i]t is … not clear that Emmer's non-compete would be prohibited under the Rule." FTC Opp. at 10. That is wrong: Ms. Emmer's non-compete falls squarely within the Rule's scope. The Rule invalidates terms and conditions of employment that "prohibit[] a worker from, penalize[] a worker for, or function[] to prevent" a worker from seeking or accepting alternative employment after leaving their job. 89 Fed. Reg. 38,342. A contract term "penalizes" a worker if it imposes a financial penalty for "accepting other work." *Id.* at 38,364. A contract term "functions to prevent" a worker from seeking or accepting other employment if it "restrain[s] such a large scope of activity" that "it has the same

6

functional effect as a term or condition prohibiting or penalizing a worker from seeking or accepting other work." *Id.*

Ms. Emmer's non-compete both penalizes her for accepting other work and functionally prevents her from doing so. It bars her from serving as a therapist for any current patient, anywhere in the country, for two years after her employment ends. Emmer Decl. at ¶ 5. Non-compliance triggers a financial penalty of "thousands of dollars in liquidated damages." *Id.* at ¶¶ 5-6. These terms both expressly penalize her for accepting other work and have, in effect, prevented her from doing so. *Id.* at ¶¶ 9-10 ("I would like to leave my current employer, but I do not have the freedom to do so because of the non-compete agreement. If I did not have a non-compete agreement or if it was not enforceable, I would actively be seeking a different job.").

There is thus no question that Mr. Roffino's and Ms. Emmer's rights are directly affected by this litigation. By making their non-competes unenforceable, the Rule would free them both from restraints that prevent them from seeking alternative, more remunerative employment. *Id.* Their interests are functionally identical to the interests this Court has deemed sufficient time and time again. *See Tech. Training Assocs. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 696 (11th Cir. 2017); *Meek v. Metro. Dade County*, 985 F.2d 1471 (11th Cir. 1993); *Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989). Neither party has identified any respect in

7

which Mr. Roffino's or Ms. Emmer's interests differ from the interests deemed sufficient in those cases.

Finally, the government argues that "it is unclear" whether SBM has a sufficient interest in the action, invoking the test for "associational standing." FTC Opp. at 8. Even assuming that SBM had to satisfy that test, it does so. The government does not dispute that the businesses in SBM's network would have standing to sue; it questions only whether SBM can represent those businesses given that it has constituents rather than formal members. *Id.* But as this Court held in *Doe v. Stincer*, "[t]he fact that [an organization] has constituents rather than members does not deprive it of Article III standing." 175 F.3d 879, 886 (11th Cir. 1999).

SBM falls squarely within the framework established by *Stincer*. As an organization protecting and advocating for small businesses through litigation and policy work, SBM serves "a specialized segment of the community which is the primary beneficiary of its activities, including prosecution of this kind of litigation." *Id.*; *see* Arensmeyer Decl. ¶¶ 4-5, 10, 14. Its constituents, moreover, possess the requisite "indicia of membership in an organization." *Stincer*, 175 F.3d at 886. SBM's leadership is composed of individuals "who broadly represent or are knowledgeable about the needs" of small businesses, *id.*, and includes individual small business owners. Arensmeyer Decl. ¶¶ 6-7. The businesses in SBM's network,

8

moreover, "possess the means to influence the priorities and activities [SBM] undertakes." *Stincer*, 175 F.3d at 886; *see* Arensmeyer Decl. ¶¶ 6-9.

The government tellingly addresses none of this, never reciting the standard for associational standing or trying to explain how SBM does not satisfy it. They say nothing because there is nothing to say. Indeed, the government's felt need to rely on Justice Thomas's concurrence questioning associational-standing doctrine, *see id.* at 9 (citing *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 399-405 (2024) (Thomas, J., concurring)), only confirms that SBM satisfies the doctrine in its current form.

## IV.   Intervention Would Not Undermine Congress's Authority.

Finally, the Court should reject the argument that Congress entrusted only FTC to defend its rulemakings. FTC Opp. at 12-14. Proposed Intervenors do not seek to displace or modify any argument FTC seeks to make in the Rule's defense—they seek to present argument only if FTC forgoes its defense, a situation not contemplated by the statutory authority on which FTC relies. As noted above, FTC's brief does not dispel concerns that it may stop defending the Rule—creating precisely the situation where this Court and others have allowed private litigants to defend lawful government action.

As an initial matter, FTC's argument proves too much—it notes that DOJ is vested with general authority to defend federal statutes and regulations, and then

9

argues that *only* DOJ can defend such federal policies. *See* FTC Opp. at 13 (citing 28 U.S.C. §§ 516-17). But that is not true—when DOJ declines to defend a rule, or even when it defends it in a way adverse to the interests of other parties with an interest in that rule, federal courts regularly permit intervention. *See, e.g.*, *Texas v. United States*, 805 F.3d 653 (5th Cir. 2015) (permitting, over DOJ's objection, intervention by individuals to defend Deferred Action for Parents of Americans (DAPA) program); *State ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) (permitting, over DOJ's objection, intervention by individuals benefitted by statute DOJ was defending).

More fundamentally, FTC is wrong that its authority to decide *how* to defend a rulemaking (or authorize DOJ to defend it, *see* 15 U.S.C. § 56(a)(2)) also includes the greater power to decide *whether* to defend it at all. Accepting this argument would enable the executive branch to evade the APA's notice-and-comment requirement for repealing regulations simply by acquiescing to district court injunctions that enjoin rules it disfavors. Four justices of the Supreme Court recently expressed skepticism whether this strategy "comport[s] with the principles of administrative law." *Arizona v. City & Cty. of S.F.*, 596 U.S. 763, 766 (2022)

(Roberts, C.J., concurring).[1] Particularly given FTC's unwillingness to represent that it will continue to defend the Rule, *see supra* Part II, FTC's position should give the Court pause: The agency effectively seeks to arrogate unto itself the power "to say what the law is" simply by choosing not to defend a validly enacted provision of federal law. *United States v. Windsor*, 570 U.S. 744, 762 (2013).

Proposed Intervenors have made clear they will not interfere with either FTC's or DOJ's defense of the Rule so long as that defense continues. That obviates the concerns FTC raises regarding "usurp[ation]" of the agencies' litigating authority. FTC Opp. at 14. Should those agencies decline to defend FTC's lawfully enacted regulation, Rule 24 and ample judicial experience permits Proposed Intervenors to protect their own interests by defending an enactment the government will have turned its back on.

## CONCLUSION

Proposed Intervenors respectfully request that the Court grant their motion.

---

[1] The other members of the Court did not state an opposing view; the Court merely dismissed the writ of *certiorari* as improvidently granted. *Id*. at 764 (dismissing case in one-sentence order).

Dated: January 30, 2025                                Respectfully Submitted,

/**s**/     *Michael Lieberman*

**FAIRMARK PARTNERS, LLP**
Michael Lieberman
Jamie Crooks
Tamar Katz
1001 G Street NW, Suite 400 East
Washington, DC 20001
michael@fairmarklaw.com
jamie@fairmarklaw.com
tamar@fairmarklaw.com
(818) 585-2903

**TOWARDS JUSTICE**
David H. Seligman
Rachel Dempsey
PO Box 371680, PMB 44465
Denver, CO 80237
david@towardsjustice.org
rachel@towardsjustice.org
(720) 441-2236
*Attorneys for Proposed Intervenors*

12

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,582 words. This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it was prepared using Word for Microsoft 365 in Times New Roman 14-point font, a proportionally spaced typeface.

*/s/ Michael Lieberman*
Michael Lieberman

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*/s/ Michael Lieberman*
Michael Lieberman

ii